**Nelda K. BARNES, Plaintiff,**

v.

**CONVERSE COLLEGE, Defendant.**

Civ. A. No. 77–1116.

United States District Court,
D. South Carolina,
Spartanburg Division.

July 13, 1977.

Harry S. Dent, West Columbia, S. C., Seymour DuBow, Marc P. Charmatz, National Center for Law & the Deaf, Legal Defense Fund, Washington, D. C., E Elaine Gardner, Silver Spring, Md., for plaintiff.

Frank A. Lyles, Spartanburg, S. C., for defendant.

## ORDER

HEMPHILL, District Judge.

Plaintiff, Nelda K. Barnes, filed this action on June 13, 1977,[1] for preliminary and permanent injunctive relief alleging that defendant failed to provide plaintiff with interpreter services in violation of 29 U.S.C. § 794, as amended; and the regulations promulgated thereunder; 45 C.F.R. 84, as amended. Contemporaneously, plaintiff moved the court for a preliminary injunction enjoining defendant from refusing to provide funds for interpreter services. The motion was heard in open court on June 27, 1977 and, with consent of both parties, was continued until July 5, 1977. At the latter hearing, both parties submitted testimony in the form of live witnesses, exhibits and affidavits which are the basis for the factual findings in this order.

Nelda K. Barnes is an English teacher at the Cedar Springs School for the Deaf and Blind, Spartanburg, South Carolina, and is certified in deaf education by the South Carolina Office of Teacher Education and Certification. This court is satisfied, through plaintiff's live testimony and the report of Benjamin Dawsey, Jr., Audiologist (Plaintiff's Exhibit 8) that plaintiff is a handicapped individual within the meaning of 29 U.S.C. § 794. Plaintiff is periodically required by the State Department of Education to earn additional college credits to maintain her "out-of-field" permit to teach in the public schools of South Carolina. She must earn six hours of graduate English credit in summer school in order to teach in the Fall, and has been accepted academically at Converse College. Plaintiff requires an interpreter to participate in classroom activities and seeks to have Converse College provide funds for such interpreter. It is conceded by both parties that

---

1. There was no satisfactory explanation of why plaintiff waited late to file.

Converse College is a recipient of federal funds.

■ The proper standard for issuing an injunction at the trial level was outlined by the Fourth Circuit in the case of *Sinclair Refining Co. v. Midland Oil Co.*, 55 F.2d 42 (4th Cir. 1932), and was recently reaffirmed and analyzed in *Blackwelder Furniture Co., etc. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189 (4th Cir. 1977). In formulating a standard to be followed by the district court in granting preliminary injunctions, the Circuit Court has developed what they term the "balance-of-hardship" test. The "balance-of-hardship" test is set out as follows:

> It is sufficient [to grant the motion] if the court is satisfied that there is a probable right and a probable danger, and that the right may be defeated unless the injunction is issued, and considerable weight is given to the need of protection to the plaintiff as is contrasted with the probable injury to the defendant. 55 F.2d at 45.

Under this standard for the issuance of preliminary relief, the plaintiff's likelihood of success is almost irrelevant. The court is required to find only that plaintiff has a "probable" right under which she may recover. The court then must "balance the likelihood of irreparable harm to the plaintiff against the likelihood of harm to the defendant and if they decide the balance of hardship should appear in the plaintiff's favor" then the injunction must issue. 550 F.2d at 195.[2]

■ Under the Fourth Circuit's standards, the district court must first consider whether the plaintiff has a probable right upon which she may grant her prayer for relief. Plaintiff brings this action under 29 U.S.C. § 794 which provides:

> No otherwise qualified handicapped individual . . . shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

and 45 C.F.R. 84.44(d), promulgated thereunder, which provides:

> (d) *Auxiliary Aids.* (1) A recipient to which this subpart applies shall take such steps as are necessary to ensure that no handicapped student is denied the benefits of, excluded from participation in, or otherwise subjected to discrimination under the education program or activity operated by the recipient because of the absence of educational auxiliary aids for students with impaired sensory, manual, or speaking skills.
>
> (2) Auxiliary aids may include . . . interpreters or other effective methods of making orally delivered materials available to students with hearing disabilities.

From the evidence adduced at the hearing, this court finds that plaintiff is an "otherwise qualified handicapped individual" who can adequately perform in the academic course in which she wishes to enroll with the help of an interpreter. The cost of such interpreter, for the entire summer school session, would be approximately $750.00. As such, it is probable that, under this statute and regulation, the defendant is obliged to provide for such "auxiliary aids" as an interpreter.

Defendant contends that plaintiff has no probable right to recovery because the regulation under which she brings her cause of action is not effective until the 2nd day of August, 1977. Their argument is based upon regulation § 84.22(d) which provides that a recipient of federal funds "shall comply with the . . . [requirements relating to program accessibility] within 60 days of the effective date . . . ." The effective date of the regulation is June 3, 1977. Section 84.22(d), however, applies only to subpart (c) which relates to program accessibility. Regulation § 84.44(d), upon which plaintiff relies, is contained in subpart (e) of the regulation and is not limited by § 84.22(d). Therefore the effective date of 84.44(d) is June 3, 1977, and said regulation is now in effect.

---

**2.** The appellate court indicated there may be a difference at district and appellate court levels. Certainly there is a difference, but the district court continues to be a court of *stare decisis,* in its search for truth.

■ Defendant also alleges that plaintiff may not maintain a private right of action under 29 U.S.C. § 794. In examining various cases involving similar acts and the legislative intent of Congress in enacting this particular statute, it is evident that § 794 may be enforced by a private right of action. In *Lau v. Nichols,* 414 U.S. 563, 94 S.Ct. 786, 39 L.Ed.2d 1 (1974), the Supreme Court granted relief to an individual bringing a private action under § 601 of the Civil Rights Act of 1964 which forbids discrimination based on "the ground of race, color, or national origin" in "any program or activity receiving federal financial assistance". This section is substantially identical to 29 U.S.C. § 794 except that § 601 bans discrimination based on race rather than a handicap.

Moreover, in the Conference Committee's Joint Explanation Statement, there is an expression of legislative intent to provide a private right of action for noncompliance under § 794. "This approach to implementation of § 504 (§ 794) . . . would insure administrative due process (right to hearing, right to review), provide for administrative consistency within the federal government as well as relative ease of implementation, and permit a judicial remedy through a private action." Congressional Record, S.18879 (October 10, 1974). In addition to the Supreme Court's allowance of a private cause of action under an almost identical statute and a relatively clear expression of legislative intent to allow such a private action under § 794, various other federal courts have found the existence of a private right of action under that section. *See, Lloyd v. Regional Transportation Authority,* 548 F.2d 1277 (7th Cir. 1977); *Gurmankin v. Costanzo,* 411 F.Supp. 982 (E.D. Pa.1976). For these reasons, it is the opinion of this court that a private right of action exists in the plaintiff under 29 U.S.C. § 794.

■ After having found the existence of a probable right in plaintiff, the court must look to see if there is a probable danger that the right may be defeated in absence of the issuance of preliminary relief. In this case, plaintiff has alleged, and demonstrated at the hearing, that her continued employment as a teacher is dependent upon her maintaining a valid "out-of-field" permit from the State Department of Education. Plaintiff must earn six semester hours credit from an accredited senior institution before the beginning of the school year in September or she will lose her permit and will be unable to continue employment. Therefore, refusal to grant plaintiff relief at this time would defeat any rights she may have under the statute and regulations, and, by failing to give effect to plaintiff's rights, would cause her immediate and irreparable injury in the form of loss of employment.

■ Defendant, Converse College, would, in this action, be faced with the relatively minor financial damage of an interpreter's fee which has been estimated at somewhat less than $1,000. Defendant's chief concern, however, is not the cost of the interpreter in this particular action. Defendant institution, which is a privately funded institution in close proximity with the South Carolina state-supported school for the deaf and blind, is justifiably concerned with the financial burden which it may ultimately have to bear as a result of compliance with § 794 in the future. Although the danger of future expenditures under this statute is not a proper consideration in this lawsuit, this court is most sympathetic with the plight of defendant as a private institution which may well be forced to make substantial expenditures of private monies to accommodate the federal government's generosity. Converse College is subject to regulation under 29 U.S.C. § 794 because it receives federal financial assistance. None of this federal financial assistance, however, was given the Converse College for the purpose of providing auxiliary aids for the handicapped. No educational administrator needs to be reminded of the said fact that federal money means pervasive, bureaucratic federal control; and for pervasive, tyrannical bureaucratic federal control, the Department of Health, Education and Welfare knows no equal or superior.

Converse College has been in the vanguard of educational institutions in this region which have developed programs and facilities for the handicapped. It is ironic that its students and benefactors may now be forced by the federal government to shoulder a substantial financial burden to provide special services for any handicapped person who should choose to go to Converse College. This is not to say that this court is not entirely sympathetic with the spirit of federal legislation which encourages the expansion of opportunities for the handicapped. This is merely to say that if the federal government, in all its wisdom, decides that money should be spent to provide opportunities for a particular group of people, that government should be willing to spend its own money (i. e. our taxes) for such purposes and not require that private educational institutions use their limited funds for such purposes.

Despite the obvious inequities inherent in the enforcement of this regulation with respect to private institutions, there has been no challenge to its validity and this court is bound by law to give it effect. Under the requirements set out by the Fourth Circuit in the *Sinclair Refining* case for the granting of injunctive relief under Rule 65, it is equally clear that plaintiff is entitled to the preliminary relief sought in this matter.

Therefore, the defendant Converse College will procure and compensate a qualified interpreter of its choosing for the purpose of assisting the plaintiff in her summer school classes. Plaintiff will post a security bond of four thousand ($4,000.00)[3] dollars pending the final outcome of this litigation pursuant to Rule 65(c), Federal Rules of Civil Procedure.

AND IT IS SO ORDERED.

---

**3.** Defendant estimated its costs may run as high as $2,000.00.