Jeff ARMSTRONG

v.

TURNER INDUSTRIES, LTD.

Civil Action No. 95–1938–B–1.

United States District Court,
M.D. Louisiana.

Dec. 19, 1996.

Julie Richard–Spencer of Robein, Urann & Lurye, Metairie, LA, for Plaintiff Jeff Armstrong.

Murphy J. Foster, III, Matthew M. Courtman, and Jerry L. Stovall of Breazeale, Sachse & Wilson, Baton Rouge, LA, for Defendant Turner Industries, Ltd.

## RULING ON MOTION FOR SUMMARY JUDGMENT

RIEDLINGER, United States Magistrate Judge.

This matter is before the court on a motion for summary judgment filed by the defendant, Turner Industries, Ltd. The motion is opposed by the plaintiff, Jeff Armstrong.

Plaintiff filed this action under the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101, et seq., alleging that the defendant denied him a position as a pipefitter in June of 1994 because it regarded or perceived him as disabled. Plaintiff also alleged that in its job application procedures the defendant violated the ADA by engaging in prohibited medical inquiries before making a conditional offer of employment.

Defendant moved for summary judgment on several grounds. First, the defendant argued that the plaintiff is not disabled within the meaning of the ADA. Second, the defendant contended that even if the plaintiff is disabled, he was denied employment because he falsified forms during the job application process, not because of any disability. As to the plaintiff's claim that the defendant made prohibited preemployment inquiries, the defendant maintained that the plaintiff cannot assert such a violation because he is not a person with a disability as defined by the ADA. Even assuming a disability, the defendant argued that the summary judgment record shows that the questions concerning the plaintiff's medical history were asked only after a conditional offer of employment was made. In support of its motion the defendant submitted deposition excerpts of the plaintiff and Bryan Casebonne, and the affidavits of Buddy Meaut[1] and Susan Gill.[2] Defendant also relied upon documents related to its job application process, and the plaintiff's charge of discrimination and right to sue notice.

Plaintiff opposed the motion relying on the Application for Employment and Second Injury Fund Questionnaire he completed in connection with his job application[3] and excerpts of his own deposition and the deposition of Casebonne. Plaintiff argued that the summary judgment evidence shows that there is a genuine dispute for trial on the issue of whether the defendant regarded him as having a disability. Plaintiff also argued that whether or not he is a qualified individual with a disability, he has a claim for violation of the ADA provisions that prohibit pre-offer medical inquiries and examinations. Plaintiff contended that the summary judgment record shows that there is a genuine dispute for trial on the issue of whether the defendant made a conditional offer of employment before asking him to provide a medical history and submit to a medical examination.

---

1. Meaut was employed by the defendant as a recruiter. D–4.

2. Gill was the personnel administrator for the defendant. D–13.

3. Plaintiff applied for a position as a pipefitter or boilermaker. P–2; D–3, p. 77. The Application for Employment with Turner Industries is dated June 24, 1993, but states the Date of Application is February 2, 1994. The Date Available is June 24, 1994. The Second Injury Questionnaire is dated June 24, 1994. The apparent discrepancy is these dates is not material to the defendant's motion.

### Summary Judgment Standard and Law Applicable to ADA Claim

Summary judgment is only appropriate when the moving party, in a properly supported motion, demonstrates that there is no genuine issue of material fact, and that it is entitled to judgment in its favor as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 321–29, 106 S.Ct. 2548, 2552–55, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Rule 56(c), Fed. R.Civ.P. If the moving party carries its burden under Rule 56(c), the opposing party must direct the court's attention to specific evidence in the record which demonstrates that it can satisfy a reasonable jury that it is entitled to verdict in its favor. *Anderson,* 477 U.S. at 251–53, 106 S.Ct. at 2512; Rule 56(e). This burden is not satisfied by some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions or only a scintilla of evidence. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994). After adequate time for discovery, Rule 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which it will bear the burden of proof at trial. *Celotex,* 477 U.S. at 321–23, 106 S.Ct. at 2552. Summary judgment is appropriate in any case where evidence is so weak or tenuous on essential facts that it could not support a judgment in favor of the nonmoving party. *Little,* 37 F.3d at 1076. In resolving the motion the court must view the facts and inferences in the light most favorable to the nonmoving party, and the court may not evaluate the credibility of the witnesses, weigh the evidence or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied,* 502 U.S. 1059, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992).

The substantive law identifies which facts are material. *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). In this case the court must apply the relevant provisions of Title I of the ADA which prohibits discrimination in employment against persons with disabilities. Under these provisions of the ADA a entity covered by the act cannot discriminate against a qualified individual with a disability, because of the disability, in regard to job application procedures, hiring, advancement, discharge, compensation, training and other terms, conditions and privileges of employment. 42 U.S.C. § 12112(a); *Daugherty v. City of El Paso,* 56 F.3d 695, 696 (5th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1263, 134 L.Ed.2d 211 (1996).

■ The elements of an ADA employment discrimination case which must be proved by the plaintiff are: (1) that he suffers from a disability; (2) that he is qualified for the job;[4] and (3) that an adverse employment action was made solely because of his disability. *Rizzo v. Children's World Learning Centers, Inc.,* 84 F.3d 758, 762 (5th Cir.1996). Thus, an essential, threshold requirement of the plaintiff's ADA claim is proof of a disability. *Rogers v. International Marine Terminals, Inc.,* 87 F.3d 755, 758 (5th Cir.1996).

There are three alternatives for proving disability under the ADA. An individual is disabled if he has a physical or mental impairment that substantially limits one or more of the major life activities; a record of such an impairment; or being regarded as having such an impairment. 42 U.S.C. § 12102(2); 29 CFR § 1630.2(g). A mental or physical "impairment" standing alone is not necessarily a disability within the meaning of the ADA. *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 725 (5th Cir.1995). An individual is disabled only if he has an impairment that substantially limits one or more of the major life activities. Since the ADA does not define these terms, the courts have looked first to the ADA regulations promulgated by the EEOC. *Ellison v. Software Spectrum, Inc.,* 85 F.3d 187, 189 (5th Cir.1996). These regulations set forth some of the major life activities, such as the functions of caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 CFR

---

4. There is no dispute that the plaintiff was qualified for the pipefitter or boilermaker positions for which he applied. P–1, plaintiff's depo., pp. 82–83; D–4.

§ 1630.2(I).[5] To be "substantially limited" means that one is unable to perform a major life activity that the average person in the general population can perform, or significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 CFR § 1630.2(j)(1).

The ADA also prohibits discrimination against qualified individuals with disabilities in regard to job application procedures. This prohibition includes medical examinations and inquiries. 42 U.S.C. § 12112(d)(1). An employer cannot "conduct a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability." 42 U.S.C. § 12112(d)(2)(A). However, under certain conditions an employer may require a medical examination after an offer of employment has been made to an applicant and prior to the beginning of the employment duties. 42 U.S.C. § 12112(d)(3). *See also,* 29 CFR §§ 1630.13 and 1630.14.

### Analysis

█ Plaintiff stated in his deposition that he is not disabled[6] and he does not in fact suffer from a mental or physical condition that substantially limits one or more major life activities. 42 U.S.C. § 12102(2)(A). Plaintiff argued that the defendant regarded him as having a substantially limiting impairment and did not hire him on that basis. Plaintiff cited the decision in *Stradley v. Lafourche Communications, Inc.,* 869 F.Supp. 442 (E.D.La.1994), and pointed to the evidence in the record that the defendant received after the plaintiff filled out the medical form and submitted to an examination. P–3; D–5; D–6.[7] After the plaintiff completed the forms the defendant initiated a background check. D–7, Casebonne's depo., pp. 45–48. The report obtained by the defendant stated that the plaintiff had a possible asbestos exposure in 1991. P–7; D–7, Casebonne's depo., p. 48. Casebonne testified that this information indicating possible asbestos exposure led to the decision not to employ the plaintiff. P–1; plaintiff's depo., pp. 87–89; P–5, Casebonne's depo., pp. 57–64; D–7; and D–9 through D–11, Casebonne's depo. pp. 48–50, 57–58, 63–64, 78. Plaintiff contended that this evidence of defendant's awareness of a possible medical condition is sufficient to create a genuine dispute for trial on the question of whether the defendant regarded him as having a disability.

Plaintiff must have more than a scintilla of evidence to defeat summary judgment. Contrary to the plaintiff's assertions, *Stradley* involved more than just evidence of awareness of a condition. There was also evidence of the supervisor's beliefs formed after receiving the information—evidence of the supervisor's doubts about the plaintiff's ability to function in any workplace.[8] There is no such evidence in this case. The summary judgment evidence shows that the defendant did not form any attitudes or beliefs about the plaintiff's ability to function at work once the possible asbestos exposure was discovered. The only belief formed was the belief that the plaintiff did not truthfully answer the questions on the form. P–1, Plaintiff's depo., pp. 100–102; D–10 and D–11, Casebonne's depo., pp. 63, 78. But even assuming that the defendant did not hire the plaintiff because of the prior asbestos exposure and

5. This list is not exhaustive. Other major life activities could include lifting, reaching, sitting or standing. 29 CFR § 1630, Appendix to Part 1630.

6. P–1, Plaintiff's depo., pp. 101–02.

7. Copies of "Second Injury Fund Questionnaire" completed by the plaintiff on June 24, 1994, and "Employee Health Examination Record," are found at P–3 and attached to defendant's exhibits 5 and 6.

8. In *Stradley,* the summary judgment evidence showed that the individual who terminated the plaintiff's employment testified that he understood that the plaintiff was suffering from acute anxiety and depression. Based on his general life experiences the supervisor believed that the plaintiff's condition made him potentially violent and hostile in the workplace. *Stradley, supra.*

not because he failed to disclose it, this would not change the result. There is no evidence that the defendant perceived the plaintiff's exposure to asbestos as substantially limiting him in his ability to work or engage in any other major life activity. *See, Bridges v. City of Bossier*, 92 F.3d 329, 334–35 (5th Cir.1996).[9]

The regulations promulgated to implement the ADA state that "regarded as having" an impairment can mean that an individual: (1) has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation; (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) has none of the impairments defined in paragraph (h)(1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment. 29 CFR § 1630.2(*l* ). Defendant's mere awareness of a possible asbestos exposure approximately four years earlier, and its decision at that point not to hire the plaintiff, is not evidence of sufficient caliber and quantity to defeat summary judgment.[10] Based on this evidence a reasonable jury could not make a finding in the plaintiff's favor that the defendant regarded or perceived him as having a medical condition that substantially lim-

ited him in his ability to do the job he was applying for, work in general, or engage in any other major life activity. *See, Bridges, supra; Rogers, supra,* at 759; *Dutcher, supra,* at 728; *Ellison, supra,* at 192; *Ray v. Glidden Company,* 85 F.3d 227, 229 (5th Cir.1996).[11]

■ The only remaining issue involves the plaintiff's contention that the defendant's alleged conduct violated the ADA's restrictions on medical inquiries and examinations.[12] Defendant argued that summary judgment must also be granted on this claim because the plaintiff is not disabled within the meaning of the ADA. Plaintiff maintained that this claim is separate and not contingent upon whether he meets the ADA definition of a qualified individual with a disability.

The ADA provisions addressing preemployment inquiries are substantially the same as those included in the regulations under the Rehabilitation Act.[13] The parties did not cite and the court did not find any cases specifically addressing the question[14] whether an individual who does not meet any of the three alternative definitions of disability may maintain a claim for violation of the ADA's standards regarding medical inquiries during the job application process. In the absence of any controlling or persuasive authority the court must turn to the statute to discern the answer.

9. Plaintiff argued that the summary judgment evidence would allow the fact finder to reasonably conclude that Casebonne did not actually believe the plaintiff falsified his job application, i.e., the proffered reason for not hiring the plaintiff is untrue. This argument is unavailing. Even if the jury were to find that the plaintiff did not make a false statement on the Second Injury Fund Questionnaire, or that Casebonne could not have reasonably believed that he did, there is still no evidence that the defendant thought the plaintiff was disabled. *See, Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 994 (5th Cir.1996) (en banc) (*citing Woods v. Friction Materials,* 30 F.3d 255, 261 n. 3 (1st Cir.1994) (concluding that a jury could not infer age discrimination if the proffered reason was in fact a pretext, though not for discrimination)). Whether the plaintiff was not hired because he was known to be a paid union organizer is not a question the court must resolve on this motion, nor would it have to be resolved at a trial.

10. *See, Aucutt v. Six Flags Over Mid–America, Inc.,* 85 F.3d 1311, 1319–20 (8th Cir.1996).

11. These are all recent decisions by the Fifth Circuit in which the court granted summary judgment on the issue of whether an employer regarded an employee as having a substantially limiting impairment.

12. Since the defendant is entitled to summary judgment on the threshold issue of disability, it is unnecessary to address evidence related to the third element of the plaintiff's case.

13. 45 CFR §§ 84.13 and 84.14; *Doe v. Syracuse School District,* 508 F.Supp. 333, 336–37 (N.D.N.Y.1981).

14. Defendant cited *Johnston v. Morrison, Inc.,* 849 F.Supp. 777, 780 (N.D.Ala.1994), but the decision is of little help because it contains no analysis or reasoning for its finding. A reported Rehabilitation Act case which appears to support the defendant's position is *Doe, supra,* but it also has no analysis of the issue.

The starting point for statutory interpretation is the language of the statute itself. *Bailey v. United States*, —— U.S. ——, ——, 116 S.Ct. 501, 506, 133 L.Ed.2d 472 (1995). The applicable language is as follows:

**(2) Preemployment**

**(A) Prohibited examination or inquiry**

Except as provided in paragraph (3), a covered entity shall not conduct a medical examination or make inquiries of a **job applicant** as to whether such applicant is an individual with a disability or as to the nature or severity of such disability.

**(3) Employment entrance examination**

A covered entity may require a medical examination after an offer of employment has been made to a job **applicant** and prior to the commencement of the employment duties of such applicant, and may condition an offer of employment on the results of such examination, .... (Emphasis added.)

Viewing these parts of the statute in isolation, the use of the term "job applicant" without any qualification or modifiers appears to lend support to the argument that an individual who is not a "qualified individual with a disability" can bring a claim under the ADA if an employer violates § 12112(d)(2)–(3). Defining the plain meaning of a statutory word or phrase, however, is only the starting point in statutory construction. Not only the bare meaning of the word but also its placement and purpose in the statutory scheme must be considered. *Rowinsky v. Bryan Independent School District*, 80 F.3d 1006, 1012 (5th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 165, 136 L.Ed.2d 108 (1996). "The meaning of statutory language, plain or not, depends on context." *Id.*

Applying this principle, nothing in the remainder of the statute suggests that the use of the term job applicant should be interpreted to mean that any job applicant, regardless of disability, has a claim for violation of the prohibitions related to preemployment inquiries. The first paragraph under the subsection title and preceding § 12112(d)(2)(A) states that "[t]he prohibition against discrimination as referred to in subsection (a) of this section shall include medical examinations and inquiries." 42 U.S.C. § 12112(d)(1). This is a reference to § 12112(a) which sets forth the general rule prohibiting discrimination against a "qualified individual with a disability ... in regard to job application procedures," hiring, advancement, discharge, compensation, job training and other terms, conditions and privileges of employment. Thus, the prohibition against preemployment inquiries specifically refers back to the general prohibition against discrimination against qualified individuals with disabilities. Throughout the next paragraph, which is § 12112(b), the statute further defines the types of discrimination prohibited and continues to refer to job applicants or employees who are otherwise qualified individuals with disabilities.

There is also nothing in the legislative history which supports the conclusion that Congress intended any job applicant to have a cause of action for violation of the ADA rules on preemployment examinations and inquiries. A review of the legislative history shows that the section on medical examinations and inquiries was included to parallel the same requirements and regulations under the Rehabilitation Act of 1973, and designed to prevent employers from using preemployment information obtained from forms and interviews to exclude applicants with disabilities, particularly persons with "hidden" disabilities. H.R.Rep. No. 101–485(III), 101st Cong., 2d Sess. 43, 44 (1990), *reprinted in*, 1990 U.S.C.C.A.N. 445, 465–67. Again, the legislative history indicates that the preemployment provisions exist to protect qualified individuals with disabilities—those who are disabled within the meaning of the ADA—not job applicants who do not meet any of the definitions of disability in § 12102(2).

Considering the placement and purpose of the ADA restrictions on medical inquiries of job applicants found in § 12112(d) in the context of the entire statute, the most reasonable interpretation is that if a separate claim can be brought for violation of this section, it must be brought by a qualified individual with a disability as that term is defined by the ADA. Since there is no evi-

dence that the plaintiff is disabled within the meaning of the ADA, the defendant is entitled to summary judgment as a matter of law on the plaintiff's claim that the defendant conducted a medical inquiry and examination in violation of 42 U.S.C. § 12112(d).

Accordingly, the motion for summary judgment filed by the defendant, Turner Industries, Ltd., is granted and this action will be dismissed.